# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

LEON ROSS,

    Plaintiff,

v.

KARL WILLIAMS,

    Defendant.

CIVIL ACTION NO.: 6:14-cv-13

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Macon State Prison in Oglethorpe, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while he was housed at Smith State Prison in Glennville, Georgia. (Doc. 1.) On September 3, 2015, Defendant Williams ("Defendant") filed a Motion for Summary Judgment. (Doc. 29.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendant filed a Motion for Summary Judgment and that he must file a response by September 27, 2015. (Doc. 31.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.) Plaintiff filed no Response to Defendant's Motion for Summary Judgment, and the Court received no indication this Notice or Defendant's Motion was undeliverable.[1] However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Based on the reasons which follow, the Court should **GRANT** Defendant's unopposed Motion, **DISMISS** Plaintiff's Complaint, and **CLOSE** this case. In addition, the Court should **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

## BACKGROUND

On November 2, 2013, Defendant Williams was in the Smith State Prison dorm retrieving food trays. (Doc. 29-2, p. 2.) Instead of opening the tray flap, as was usual, (doc. 29-3, pp. 20–22, 40), Defendant opened the handcuff flap and asked Plaintiff to bring the food tray. (Doc. 29-2, p. 2.) Plaintiff refused and stuck his arm out of the handcuff flap to prevent Defendant from closing it. (Id.; Doc. 29-3, pp. 23–24.) Defendant asked Plaintiff to remove his arm so he could close the flap, but Plaintiff also refused. (Doc. 29-2, p. 2.) Defendant went to get mace and proceeded to spray at the flap and Plaintiff's arm. (Id. at p. 3.) In response, Plaintiff—also a known feces thrower—threw hot coffee on Defendant. (Id.) Defendant Williams then closed the handcuff flap down on Plaintiff's arm, prompting him to pull it back into his cell. Defendant Williams secured the flap and walked away. A few hours later, another

---
[1] In fact, Plaintiff has not filed anything in this case since July 23, 2014, and actually indicated in his deposition that he "ain't go on—keep on with [the lawsuit] . . . it'll be a waste of my time." (Doc. 13; Doc. 29-3, p. 11.)

officer took Plaintiff to medical. (Doc. 29-2, p. 3; Doc. 29-3, pp. 26–27.) The medical unit treated Plaintiff for a scratch and a bruise on his arm, but did not treat him for any contact with mace. (Doc. 29-2, p. 3.) Plaintiff did not require any additional medical treatment. (Id.)

After Plaintiff filed his Complaint in this Court, Defendant Williams filed a Motion to Dismiss on August 29, 2014. (Doc. 15.) Plaintiff did not respond, but Judge B. Avant Edenfield adopted the Report and Recommendation of Magistrate Judge James E. Graham as the opinion of the Court, and allowed Plaintiff's Eighth Amendment claims of excessive force and deliberate indifference to medical needs against Defendant Williams in his individual capacity to proceed. (Doc. 22.) Defendant then filed this Motion for Summary Judgment. (Doc. 29.)

## DISCUSSION

Defendant asserts in his Motion that: 1) Plaintiff cannot sustain his Eighth Amendment claims; 2) the Prison Litigation Reform Act bars Plaintiff's monetary damages claims because he did not suffer more than a *de minimis* injury as a result of Defendant's actions; and 3) Defendant is entitled to qualified immunity. (Doc. 29-1, pp. 4, 7, 14–16.) In moving for summary judgment, Defendant relies on his Statement of Material Facts and a copy of the transcript from Plaintiff's deposition.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his claims, and the Court should grant Defendant's Motion as a result.

## I. Standard of Review

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the

3

nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.     Plaintiff's Use of Force Claim**

Plaintiff's excessive use of force claim and Defendant's Motion require analysis of the Eighth Amendment's proscription against cruel and unusual punishment. That proscription governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994).

In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

Through his supporting materials, Defendant shows the following in light of the factors the Court is to consider when analyzing whether an Eighth Amendment use of force was done wantonly and unnecessarily to cause harm.

**A.     The Need for the Exercise of Force**

Based upon the undisputed facts before the Court, there appears to have been a need for Defendant Williams' exercise of force. In this case, Plaintiff refused a direct command from Defendant to remove his arms from the handcuff flap of his cell door. (Doc. 29-2, pp. 2–3; Doc. 29-3, pp. 40–41.) Although Defendant Williams did only ask Plaintiff to remove his arms once before spraying mace, Plaintiff escalated the situation by throwing hot coffee out of the handcuff flap onto Defendant. Defendant needed to use some measure of force against Plaintiff in an effort to obtain Plaintiff's compliance in closing the handcuff flap and prevent further escalation.

Thus, this factor weighs in Defendant's favor. Alday v. Groover, No. CV 212-108, 2014 WL 1320093, at *6 (S.D. Ga. Mar. 31, 2014) (noting that plaintiff failed to follow officer's lawful commands and that an "official need not wait until disturbances are dangerous before using force to restore order.") (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)).

### B. The Relationship Between the Need for the use of Force and the Amount Applied

Defendant used an appropriate amount of force given that Plaintiff repeatedly refused to follow orders and escalated the situation. Defendant applied mace after Plaintiff's first refusal which the Eleventh Circuit has held to be "reasonable . . . where the plaintiff [is] . . . refusing police requests." Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002). And even after Defendant sprayed him, Plaintiff still refused to remove his hands from the flap.[2] In fact, Plaintiff escalated the situation by throwing hot coffee at Defendant, and only then did Defendant close the flap onto Plaintiff's arm to secure the handcuff flap. This factor is also in Defendant's favor particularly because the Court gives greater "deference to prison officials acting to preserve discipline and security, especially when they make decisions at the scene of a disturbance. Williams v. Slack, 438 Fed. App'x 848, 851 (11th Cir. 2011).

### C. The Extent of Plaintiff's Injuries

The extent of Plaintiff's injury also weighs in favor of summary judgment. The extent of injury "is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id.

---

[2] Plaintiff baldly states in his deposition that he could move away from the flap, but didn't because, "I was bucking [preventing the flap from closing]. Why I'm going to move for?" (Doc. 29-3 at p. 25.)

6

at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

In the case at hand, Plaintiff's injuries were minimal. In fact, Plaintiff even states in his deposition that he only received a bruise and a "little light scratch." (Doc. 29-3 at p. 31.) He did not need any stitches, pain-killers, treatment for the mace, or follow-up medical visit. (Id. at pp. 42–43.) While injury and the amount of force are imperfectly correlated, here the indisputably minimal injuries that Plaintiff suffered reveal that Defendant only applied minimal force. These injuries are so insignificant that they weigh against the jury finding for Plaintiff on the "core judicial inquiry" of whether "the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins, 559 U.S. at 39 (alteration in original) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

### D. Extent of Threat to the Safety of Staff and Other Inmates

Defendant acted to protect himself and to maintain security and discipline when he used force. Plaintiff had a reputation for throwing fecal matter outside of his cell and Defendant was trying to secure the handcuff flap which raises safety concerns. Plaintiff purposely prevented Defendant from securing the flap and attacked Defendant by throwing hot coffee at him. This factor also goes to Defendant's favor given Plaintiff's actions and reputation.

### E. Any Efforts Taken to Temper the Severity of the Forceful Response

Given Plaintiff's injuries resulting from Defendant's use of force, little effort was needed to mitigate the effects of the force. However, Plaintiff still received a medical evaluation, though it did occur a few hours after the use of force incident. (Doc. 29-2, p. 3.) Given the low severity

of Plaintiff's injury and the medical care provided, the evidence reveals no impropriety and, therefore, falls in Defendant's favor. Alday, 2014 WL 1320093, at *7.

None of the five factors this Court needs to examine for excessive force claims cuts in Plaintiff's favor. Consequently, the Court should **GRANT** this portion of Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's excessive force claims.

### III. Plaintiff's Deliberate Indifference Claim

Plaintiff's deliberate indifference claim against Defendant for not providing immediate medical care also requires analysis under the Eighth Amendment. The Eighth Amendment's proscription against cruel and unusual punishment also imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

To prevail on a deliberate indifference claim, a prisoner must demonstrate "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Youmans v. Gagnon, 626 F.3d 557, 563 (11th Cir. 2010). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the

8

necessity for a doctor's attention.'" Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

The meaning of "'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

In this case, Plaintiff has failed to establish any of the elements of his deliberate indifference claim. He did not have a serious medical need and, what injuries he did have, he received treatment for just a few hours later. There is no evidence that the delay in treatment worsened Plaintiff's medical condition. The nurse gave no indication that Plaintiff's injuries were serious when she examined the bruise and scratch. Plaintiff did not need stitches, pain-killers, or any type of follow-up treatment. Although Plaintiff contends in his Complaint that there was mace on his face, he states otherwise in his deposition. (Doc. 1, p. 5; Doc. 29-3,

9

p. 29.) Furthermore, Plaintiff was able to wash off the mace that did get on his arm in his cell's sink—he did not have to receive medical treatment for it. (Doc. 29-3, p. 30.)

For these reasons the Court should also **GRANT** this portion of Defendant's Motion for Summary Judgment and **DISMISS** Plaintiff's deliberate indifference claims.

### IV.   Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]") (italics supplied). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[3] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

Based on the above analysis of Defendant's Motion for Summary Judgment, the Court should **DENY** Plaintiff's potential *in forma pauperis* status on appeal as there are no non-frivolous issues to raise, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendant's unopposed Motion for Summary Judgment. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint, **CLOSE** this case, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO REPORTED** and **RECOMMENDED**, this 6th day of July, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA